```
         UNITED STATES DISTRICT COURT
          MIDDLE DISTRICT OF FLORIDA
             JACKSONVILLE DIVISION
```

CURTIS ANTONIO WAY,

        Plaintiff,

v.

        Case No. 3:08-cv-1005-J-34TEM

JOHN H. RUTHERFORD, etc.;
et al.,

        Defendants.

_____

### ORDER

### I. Status

Plaintiff Curtis Antonio Way, who is proceeding pro se and in forma pauperis, initiated this action by filing a Civil Rights Complaint (Doc. #1) under 42 U.S.C. § 1983 on October 14, 2008, pursuant to the mailbox rule. Thereafter, he filed an Amended Complaint (Doc. #8) and a Second Amended Complaint (Doc. #11). Plaintiff is now proceeding on a Third Amended Complaint (Complaint) (Doc. #15), in which he names the following individuals as the Defendants in the action: (1) Sheriff John H. Rutherford;

(2) Gordon Bass, the Director of Corrections; (3) Tara Wildes, the Chief of the Pretrial Detention Facility (PTDF); (4) Captain R. Sisak; (5) Lieutenant S. Inman; (6) Sergeant J. Branch; and (7) Officer David Register.  Plaintiff claims that the Defendants failed to provide access to an adequate law library or adequate assistance from persons trained in the law and erected barriers that frustrated or impeded his access to the courts.

This cause is before the Court on Defendants' Motion to Dismiss (Doc. #27) and Notice of Filing Declaration of Sergeant Dwayne B. Price (Doc. #28).  Since Plaintiff is appearing pro se, the Court advised him that, if the Defendants were to file a motion to dismiss that is supported by affidavits or other documents, the Court would construe the motion to dismiss as a motion for summary judgment.  See Order Directing Service of Process Upon Defendants and Notice to Plaintiff (Doc. #18), filed January 7, 2010, at 4. Further, the Court advised Plaintiff of the provisions of Fed. R. Civ. P. 56 and gave him an opportunity to respond to the motion. Id. at 4-5; Order (Doc. #29), filed May 17, 2010. On July 16, 2010, Plaintiff filed his Objections to Defendants' Motion to Dismiss (Objections) (Doc. #32).  This case is ripe for review.

## II. Summary Judgment Standard

Defendants' Motion to Dismiss (Doc. #27), which is supported by the affidavit of Sergeant Dwayne B. Price, is construed as a motion for summary judgment.  "Summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324, 106 S.Ct. 2548).[1]

Id. at 1314; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

---

[1] Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

### III. Plaintiff's Allegations and Claims

In the Complaint (Doc. #15), Plaintiff contends that the Defendants denied him access to the courts. In support of his claim, he presents the following facts. He alleges that, on April 14, 2008, an inmate at the PTDF "brutally raped" a Jacksonville Sheriff's Office (JSO) corrections officer in the PTDF's law library. Complaint at 8-9. Immediately after the crime was committed, the PTDF's law library was closed and was designated an active crime scene where only law enforcement officers and investigators were permitted entry. Id. at 9. Plaintiff Way avers that it was subsequently "determined that the current location and set up for the law library was a security danger to the JSO Correctional staff and needed to be relocated and restructured to prevent additional attacks." Id. Since the law library was closed, the PTDF inmates were not permitted physical access. Id.

Plaintiff states that the PTDF officials failed to post a notice, advising the pro se inmates that they could request specific legal materials which would be delivered to them in their cells. Id. He also avers that several copies of his pro se motions and other legal materials relating to his pending cases were confiscated, destroyed and restricted as "nonallowable items." Id. at 9(a). After more than three months, Plaintiff filed a motion for temporary retraining order or for preliminary injunction

(TRO/PI Motion) in Way v. Rutherford, et al., Case No. 3:07-cv-1060-J-32JRK,[2] which was denied. Id.

Plaintiff acknowledges that the PTDF's law library was reopened on August 7, 2008, in a new location and that Plaintiff physically visited the law library that day. Id. at 9(b). However, he asserts that the new location, a smaller area on the fourth floor, has fewer law books and therefore is not a constitutionally acceptable method to assure meaningful access to the courts. Id. at 9(a)-9(b). Specifically, he complains about missing volumes of various reports, the restriction of library hours, the excessive number of inmates per session, and the smaller size of the relocated law library. Id. at 9(d). As relief, Plaintiff requests a declaratory judgment, injunctive relief and compensatory damages in the amount of $200,000.00.[3] Id. at 10-10(a).

---

[2] Way filed a TRO/PI Motion on July 23, 2008, pursuant to the mailbox rule, in his civil rights case in federal court and complained about closure of the law library. See Way v. Rutherford, et al., Case No. 3:07-cv-1060-J-32JRK, TRO/PI Motion (Doc. #21). The Court denied the TRO/PI Motion. See Order (Doc. #23); Order (Doc. #26) (finding that "the alleged Constitutional violation has been cured and plaintiff's motion is moot" based on the affidavit of Sergeant Price, noting the reopening of the law library on August 7, 2008, and Way's visit that same day).

[3] To the extent that Plaintiff is seeking compensatory damages for mental or emotional injuries, Plaintiff's action for damages against the Defendants is barred by 42 U.S.C. § 1997e(e) as long as he remains incarcerated. See Napier v. Preslicka, 314 F.3d 528, 531-32 (11th Cir. 2002), cert. denied, 540 U.S. 112 (2004).

## IV. Law and Conclusions

Access to the courts is a constitutional right grounded in several constitutional amendments, including the First Amendment and the Fourteenth Amendment. Chappell v. Rich, 340 F.3d 1279, 1282 (11th Cir. 2003), cert. denied, 540 U.S. 1219 (2004); see also Barbour v. Haley, 471 F.3d 1222, 1224 n.2 (11th Cir. 2006) (noting that the prisoners' claim that they had been denied meaningful access to the courts implicated both the First and Fourteenth Amendments), cert. denied, 551 U.S. 1134 (2007). The United States Supreme Court has held that the "right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977) (footnote omitted). Years later, in Lewis, the Supreme Court clarified that, although prison law libraries and legal assistance programs are "one constitutionally acceptable method to assure meaningful access to courts," they are not ends in themselves. Lewis v. Casey, 518 U.S. 343, 351 (1996) (quotation omitted). "The inquiry is [ ] whether law libraries or other forms of legal assistance are needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds, 430 U.S. at 825.

To assert a claim arising from the denial of meaningful access to the courts, a plaintiff must first establish an actual injury. <u>Lewis</u>, 518 U.S. 349-50; <u>Barbour</u>, 471 F.3d at 1225. The actual injury requirement may be satisfied "by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program." <u>Barbour</u>, 471 F.3d at 1225. As such, to show actual injury, "the plaintiff must identify within his complaint, a nonfrivolous, arguable underlying claim." <u>Id</u>. at 1226 (citation and quotations omitted). And, the plaintiff must show that he has more than a mere "hope" of obtaining relief on the underlying claim. See <u>Cunningham v. Dist. Attorney's Office for Escambia Cnty.</u>, 592 F.3d 1237, 1271 (11th Cir. 2010).

Additionally, "the injury requirement is not satisfied by just any type of frustrated legal claim"; the plaintiff must show that his underlying nonfrivolous legal claim was raised, or would have been raised, in connection with a direct appeal, a collateral attack on his conviction, or a civil rights action. <u>Lewis</u>, 518 U.S. at 354-57; <u>Cranford v. Nevada Dep't of Corr.</u>, No. 10-11679, 2010 WL 3860725, at *7 (11th Cir. Oct. 5, 2010) (not selected for publication in the Federal Reporter). The Eleventh Circuit explained:

> With respect to access-to-court claims, <u>Lewis</u> clarifies that a plaintiff first must show actual injury before seeking relief under <u>Bounds</u>. See <u>Bass v. Singletary</u>, 143 F.3d 1442,

7

> 1444 (11th Cir. 1998). This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. See id. at 1445. To prevail, a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials. See id. at 1446. Therefore, in an access-to-courts claim, "a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic." Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam). Rather, **a plaintiff must demonstrate that the lack of a law library or inadequate access to counsel hindered his "efforts to proceed with a legal claim in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate basic constitutional rights."** Id.

Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (emphasis added).

Plaintiff has not shown that the alleged lack of access to the law library and legal materials hindered his efforts to proceed with a legal claim in a criminal appeal, post-conviction matter, or civil rights action seeking to vindicate basic constitutional rights. See Lewis, 518 U.S. at 354. Instead, he alleges that his state case (Curtis Antonio Way v. Notary Section Office of the Governor, Case No. 2008-CA-001672) was dismissed with prejudice as a result of the Defendants' actions. See Objections at 4-5.[4]

---

[4] In Case No. 3:07-cv-1060-J-32JRK, Way stated that the Defendants' actions in denying him "his basic right to do legal

8

Way's state court case against the notary section of the Office of the Governor is not the type of case that is included under the right of inmates' access to courts under Lewis.[5] Thus, Plaintiff lacks standing to bring an access to the courts claim. See Moulds v. Bullard, 345 Fed.Appx. 387, 394 (11th Cir. 2009) (stating plaintiff lacked standing to bring an access to the courts claim and the district court did not err in granting summary judgment) (not selected for publication in the Federal Reporter); Blair v. Coates, No. 8:07-cv-1781-T-30MSS, 2008 WL 151866, at *2 (M.D. Fla. Jan. 15, 2008) ("Because Plaintiff has failed to specify any injury, i.e., that Defendants' alleged conduct impeded him from pursuing a non-frivolous direct or collateral attack on a sentence or a challenge to conditions of confinement claim, Plaintiff has

---

research . . . resulted in the Supreme Court's dismissal of one (1) of plaintiff's case[s] that was pending." Case No. 3:07-cv-1060-J-32JRK, TRO/PI Motion (Doc. #21) at 2, paragraph 2.  In that state case, Way filed a "notice to invoke jurisdiction/discretionary review" on June 16, 2008.  See http://jweb.flcourts.org (website for the Supreme Court of Florida), Curtis Antonio Way v. The Florida Bar, SC08-1150.  The Supreme Court of Florida construed the notice as a petition for writ of mandamus, determined that the court was without jurisdiction and dismissed the case on June 18, 2008.  Id.  That dismissal was based on the court's lack of jurisdiction and not the result of Way's alleged inability to access the law library or adequate legal materials.

[5] Plaintiff explained the basis of the state case: "The . . . case involved a state court action in which plaintiff initiated proceedings in order to challenge the trial court's lack of subject matter jurisdiction based upon the assistant state attorney's knowing and willful solicitation of a notary public while preparing a felony charge . . . in violation of multiple state statutes." Objections at 5 (emphasis deleted).

failed to meet the standard for access-to-court claims set forth in Wilson.") (not selected for publication in the Federal Reporter).[6]

Even assuming arguendo that Plaintiff has established an "actual injury," he has not shown that the injury resulted from the actions of the named Defendants. In support of Defendants' Motion to Dismiss (Doc. #27), Defendants filed the affidavit of Sergeant Dwayne B. Price (Sergeant Price's Affidavit), in which he avers:

> 1. Declarant is a Sergeant for the Jacksonville Sheriff's Office (JSO), Corrections Division, and works in the Duval County Pretrial Detention Facility ("PTDF").
>
> 2. Declarant is familiar with the circumstances of the April 14, 2008 closure and relocation of the PTDF law library. Declarant is also familiar with the Plaintiff, who is currently incarcerated at the PTDF.
>
> 3. On April 14, 2008, a JSO Corrections Officer was brutally raped by an inmate in the PTDF's law library.
>
> 4. Immediately after that crime was committed, the PTDF's law library was closed and designated an active crime scene. Only investigating law enforcement officials were permitted entry.

---

[6] Bounds requires that inmates be provided the tools necessary to directly or collaterally attack their sentences and to challenge the conditions of their confinement." Lewis, 518 U.S. at 355. However, interference with or impairment of "any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. As evidenced by Way's filings in Case No. 3:07-cv-1060-J-32JRK, Way was able to file motions and pursue his civil rights case in federal court during the relevant one hundred and fifteen (115) day period. See Case No. 3:07-cv-1060-J-32JRk, Motion for Production of Documents (Doc. #17), filed May 21, 2008; TRO/PI Motion (Doc. #21) and Affidavit (Doc. #22), filed July 23, 2008.

>5. It was determined that the then-current location and set up of the law library was a security danger to the JSO correctional staff and needed to be relocated and restructured to prevent additional attacks.
>
>6. During the time that the law library was closed, no physical access by inmates was permitted, however inmates who were not represented by attorneys could request specific legal material which would be delivered to them in their cells.
>
>7. A safer and less secluded location in the PTDF was selected for the law library and the legal library books were relocated to the new location.
>
>8. Further, two computers were loaded with Westlaw's Premise - Florida Correctional Library and placed in the library's new location in the PTDF. A summary/table of contents of Westlaw's Premise - Florida Correctional Library is attached as Exhibit "A."[7]
>
>9. On August 7, 2008, the new location of the PTDF's law library was opened and physical access by inmates, including the Plaintiff, was permitted.
>
>10. On August 7, 2008, the Plaintiff did physically visit the PTDF's law library.

Sergeant Price's Affidavit.

Plaintiff's allegations and claims center upon the PTDF's procedures and Way's ability to access legal materials subsequent to the April 14, 2008 incident referenced in Sergeant Price's Affidavit. It is undisputed that the Defendants changed the

---

[7] See Way v. Rutherford, et al., Case No. 3:07-cv-1060-J-32JRK, Doc. #25-1, Declaration of Dwayne B. Price, Exhibit A, Summary/Table of Contents.

location of the law library as a matter of security. As Sergeant Price explained, prior to the opening of the new location, the Defendants provided an alternative to physical law library visits in that those inmates proceeding pro se could request legal materials which would be delivered to their cells. Thus, while Plaintiff could not physically visit the law library during this particular time period (April 14, 2008, through August 6, 2008), he could request legal materials to assist him in his legal pursuits. And, as evidenced by Case No. 3:07-cv-1060-J-32JRK, Way continued to pursue his civil rights action in this Court by filing motions. Moreover, on August 7, 2008, the newly relocated law library opened, and Plaintiff visited it that very same day. In the new law library, two computers with Westlaw's "Premise - Florida Correctional Library" are available to the PTDF inmates to assist them in their legal pursuits.

In sum, while the fifth floor law library was immediately closed due to security concerns resulting form the April 14, 2008 incident, Plaintiff had other avenues available to assist him with his legal pursuits. And, upon the opening of the newly relocated library on August 7, 2008, Plaintiff had physical access to the library and adequate legal materials available to him. Additionally, the restrictions placed on access to the law library for the four-month period were reasonably related to legitimate penological interests; the immediate closure of the fifth floor

library was for the investigation of a brutal sexual attack upon a JSO correctional officer and the prevention of future crimes within that secluded area of the PTDF. See Lewis, 518 U.S. at 361-62. Therefore, Defendants' Motion to Dismiss, construed as a motion for summary judgment, will be granted.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss (Doc. #27), construed as a motion for summary judgment, is **GRANTED**.

2. The Clerk of Court shall enter judgment in favor of the Defendants.

3. The Clerk of Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of December, 2010.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

sc 12/23
c:
Curtis Antonio Way
Counsel of Record

13